IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANTHONY WILLIAM DELMONACO,

          Plaintiff,

vs.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

          Defendant.

Case No. 1:17-cv-00345-AC

OPINION AND ORDER

---

MARK A. MANNING
Harder, Wells, Baron & Manning, P.C.
474 Willamette Street
Eugene, OR 97401
    Attorney for plaintiff

KARL E. OSTERHOUT
Osterhout Berger Disability Law, LLC
521 Cedar Way, Suite 200
Oakmont, PA 15139
    Of Attorneys for plaintiff
    Pro hac vice

BILLY J. WILLIAMS
United States Attorney
District of Oregon
RENATA GOWIE
Assistant United States Attorney

1000 SW Third Ave., Suite 600
Portland, OR 97201-2902

RYAN LU
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075
    Of Attorneys for defendant

ACOSTA, Magistrate Judge:

Anthony W. Delmonaco ("plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II & XVI of the Social Security Act ("Act"). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Based on a careful review of the record, the Commissioner's decision is reversed and this case remanded for further proceedings.

*Procedural Background*

Plaintiff applied for DIB and SSI on May 20, 2013 and July 15, 2013, respectively, alleging disability as of August 9, 2012, due to aortic aneurysm, vertigo, and back pain. (Tr. 20, 91, 92.) His applications were denied initially and upon reconsideration. (Tr. 90-94.) A hearing convened on February 11, 2015, before an Administrative Law Judge ("ALJ"). (Tr. 37-70.) On May 11, 2015, the ALJ issued a decision finding plaintiff not disabled. (Tr. 17-34.) Plaintiff timely requested review of the ALJ's decision and, after the Appeals Council denied review, plaintiff filed a complaint in this court. (Tr. 1-3.)

\\\\\

\\\\\

*Factual Background*

Born on April 17, 1961, plaintiff was 51 years old on the alleged onset date of disability and 54 years old on the date of the hearing. (Tr. 72.) Plaintiff earned his GED in 1979. (Tr. 227, 241.)

*Standard of Review*

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 42 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity;" if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b).

Page 3 - OPINION AND ORDER

At step two, the Commissioner resolves whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner evaluates whether the claimant's impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. § 404.1520(d). If so, the claimant is presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant still can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141.

At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. *Id.* at 142; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

*The ALJ's Findings*

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 22.) At step two, the ALJ found plaintiff had the following severe impairments: "cervical spine, angina, and hypertension." *Id.*

At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that met or medically equaled one of a number of impairments that are so severe as to preclude substantial gainful activity. (Tr. 24.)

Accordingly, the ALJ continued the sequential evaluation process to determine how plaintiff's medical limitations affected her ability to work. The ALJ resolved that plaintiff had the following residual functional capacity ("RFC"):

> [He can] perform light work . . . with the ability to stand/walk for 6 hours and sit for 2 hours during an 8-hour workday, as well as lift and carry 20 pounds occasionally and 10 pounds frequently. However, he is restricted to climbing ladders, ropes, and scaffolds and crawling on an occasional basis. On a bilateral basis, the claimant can reach overhead occasionally. The claimant's [RFC] includes the avoidance of concentrated exposure to extreme cold, vibration, and hazardous machinery.

(Tr. 24-25.)

At step four, the ALJ found plaintiff was not capable of performing his past relevant work as a parts picker or a press operator. (Tr. 28.) At step five, the ALJ found that plaintiff retained the capacity to perform the following representative occupations: food service worker and tanning salon attendant. (Tr. 28.) Accordingly, the ALJ concluded instead that plaintiff was not disabled under the Act. (Tr. 29.)

*Discussion*

Plaintiff argues that the ALJ: (1) failed to identify suitable other work at step five of the sequential evaluation process; and (2) erroneously failed to address post-hearing objections to the VE's testimony.

I. Step Five: Other Work

Plaintiff asserts the ALJ erred in identifying the jobs of "tanning salon attendant" and "food service worker" because the ALJ failed to reconcile the apparent conflict between the DOT listed requirements for the jobs and plaintiff's RFC. At step five of the sequential evaluation process, "the Commissioner has the burden to identify specific jobs existing in substantial numbers in the national

Page 5 - OPINION AND ORDER

economy that a claimant can perform despite his identified limitations." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) (quoting *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015)) (internal brackets and quotation marks omitted); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). "When there is an apparent conflict between the vocational expert's testimony and the DOT – for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle – the ALJ is required to reconcile the inconsistency." *Zavalin*, 778 F.3d at 846 (citing *Massachai v. Astrue*, 486 F.3d 1149, 1153-54 (9th Cir. 2007)). Under SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000), "the ALJ has an affirmative duty to ask the expert to explain the conflict and then determine whether the [VE's] explanation for the conflict is reasonable before relying on the expert's testimony . . . ." *Rounds*, 807 F.3d at 1002 (citation and internal quotation marks omitted). The Commissioner concedes that the ALJ's finding as to "tanning salon attendant" was not supported by substantial evidence, but contends that the error was harmless because plaintiff's RFC comports with the DOT's requirements for "food service worker." *See* Def.'s Br. 4-5. The court disagrees.

Plaintiff argues that because his RFC limits him to only occasional *overhead* reaching, it conflicts with the DOT, which specifies that "food service worker" requires frequent reaching.[1] Because the DOT does not distinguish between overhead reaching and reaching in general, courts in the Ninth Circuit were divided on the issue of whether there was a potential inconsistency between VE testimony that a job could be preformed by a claimant who was limited to occasional overhead reaching, and a DOT description requiring frequent reaching. *See, e.g., Lee v. Astrue*, No. 6:12-cv-

---

[1] The parties agree that "food service worker" corresponds to the DOT's listing for "cafeteria attendant." DOT 311.677-010, *available at* 1991 WL 683304; *see also Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, Appendix C (1993).

Page 6 - OPINION AND ORDER

00084-SI, 2013 WL 1296071, at *11 n.5 (D. Or. Mar. 28, 2013) (collecting cases).

In 2016, however, the Ninth Circuit seemingly resolved the issue, explaining that, "[w]hile 'reaching' connotes the ability to extend one's hands and arms 'in any direction,' not every job that involves reaching requires the ability to reach overhead." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016); *see also* SSR 85-15, 1985 WL 56857, at *1. The Ninth Circuit determined that because "frequent reaching" does not necessarily correlate to "overhead reaching," it was required "to determine whether *overhead* reaching is such a common and obvious part of cashiering that the ALJ should have recognized a conflict and questioned the expert more closely" before concluding the claimant could work as a cashier. *Id.* at 807 (emphasis in original). The court concluded that because "anyone who's made a trip to the corner grocery store knows that while a clerk stocking shelves has to reach overhead frequently, a typical cashier never has to." *Id.* at 808. Apparently the court's deduction was sufficient to constitute substantial evidence, as it held that it was so uncommon for cashiers to reach overhead that the ALJ was not required to solicit more specific explanations from the VE. *Id.* Rather, reasoned the court, "[t]he requirement for an ALJ to ask follow-up questions is fact-dependent," such that an ALJ must ask follow-up questions only if the VE's testimony "is either obviously or apparently contrary to the [DOT], but the obligation does extend to unlikely situations or circumstances." *Id.*

The Ninth Circuit recently revisited *Gutierrez* in *Lamear v. Berryhill*, 865 F.3d 1201 (9th Cir. 2017). In *Lamear*, the question was whether a worker who was limited to one-handed handling, fingering, and feeling could perform jobs that required frequent handling, feeling, and fingering. *Id.* at 1205-06. The Ninth Circuit concluded that it was "likely and foreseeable" that use of both hands would be needed to effectively perform the "essential, integral, or expected" tasks in each of the jobs

Page 7 - OPINION AND ORDER

the ALJ had identified. *Id.*

Accordingly, the question here is whether the job of "food service worker" is one where, based on common experience, it is likely and foreseeable that more than occasional overhead reaching would be required. *Gutierrez*, 844 F.3d at 807; *Lamear*, 865 F.3d at 1205. The Commissioner argues that frequent overhead reaching is not a common or obvious activity in this context based on the description in the DOT:

> Carries tray from food counters to tables for cafeteria patrons. Carries dirty dishes to kitchen. Wipes tables and seats with dampened cloth. Sets tables with clean linens, sugar bowls, and condiments. May wrap clean silver in napkins. May circulate among diners and serve coffee and be designated Coffee Server, Cafeteria or Restaurant.

DOT 311.677-010; *see* Def.'s Br. at 7. The Commissioner contends the DOT summary demonstrates that food service workers do not engage in more than occasional overhead reaching, but the passage cited above makes no reference to reaching whatsoever, despite the undisputed fact that the DOT elsewhere indicates that the job requires "frequent reaching." Indeed, the DOT does not address overhead reaching at all, even for jobs that require frequent or constant overhead reaching, so the DOT passage cited provides no guidance for determining the extent overhead reaching may be required for a food service worker.

Plaintiff asserts that the "common experience" test articulated in *Lamear* suggests the ALJ erred. Specifically, contends plaintiff, the job of food service worker requires an employee to spend at least part of the workday in the kitchen, which presumably would entail some degree of overhead reaching for pots, pans, dishes, or other supplies from storage shelving. Pl.'s Reply at 5. The court agrees with plaintiff's premise. Although none of the activities listed in the DOT definition necessarily require overhead lifting, it is common for kitchens to be arranged in such a manner that

Page 8 - OPINION AND ORDER

items regularly used by a food service worker – trays, dishes, linens, silverware, and other supplies – could require overhead reaching to remove from and return to storage spaces.

Consistent with this observation, other courts within the Ninth Circuit have found, in light of *Gutierrez*, a potential conflict between an RFC limitation to occasional overhead reaching and jobs which the DOT defines as requiring frequent reaching. *See, e.g., Cochrane v. Berryhill*, No. 3:16-cv-01194-HZ, 260 F.Supp.3d. 1317, 1335-36 (D. Or. May 18, 2017) (finding potential conflict between counter clerk job requiring "occasional reaching" and RFC limitation prohibiting all overhead reaching); *Meneses v. Berryhill,* No. ED CV 16-1061-PLA, *available at* 2017 WL 598759, at *9 (C.D. Cal. Feb. 14, 2017) (finding potential conflict between sales clerk position which required stocking shelves and RFC limiting overhead reaching). Notably, at least one case in the District of Oregon has been remanded because of the potential conflict between an RFC with an occasional overhead reaching limitation, and the frequent reaching requirement of the position analogous to food service worker, the same job at issue here. *See Ricker v. Colvin*, No. 6:12-cv-00664-CL, 2013 WL 3944424, at *7 (D. Or. July 20, 2013). These cases demonstrate that *Gutierrez* does not foreclose the possibility that a given job's frequent reaching requirement involves more than occasional overhead reaching. *See also Moore v. Colvin*, 769 F.3d 987, 989-90 (8th Cir. 2014) (remanding based on potential conflict between cafeteria attendant job and RFC for occasional overhead reaching).

Moreover, *Gutierrez* is distinguishable from the facts of this case. In *Gutierrez*, the ALJ specifically asked the VE if the VE's opinion was consistent with the DOT, and the VE confirmed that it was, despite the claimant's overhead lifting restriction. *Gutierrez*, 844 F.3d at 807. Here, in contrast, although the VE indicated he was aware of the overhead reaching limitation and identified

the job of food service worker, the ALJ did not confirm whether the VE's testimony was consistent with the DOT, and both appear to have been unaware of the potential conflict. *See* (Tr. 29, 66-67.)[2] The ALJ's failure to follow-up was error: "if the expert's opinion that the applicant is able to work conflicts with, or *seems* to conflict with, the requirements listed in the [DOT], then the ALJ *must* ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled." *Guiterrez*, 844 F.3d at 807 (citing SSR 00-4p, 2000 WL 1898704, at *2 (2000)) (emphasis added); *see also Lamear*, 865 F.3d at 1206 (citing *Zavalin*, 778 F.3d at 846).

Based on the record, the Commissioner has failed to carry the step-five burden to establish plaintiff can perform other work in the national economy. *Yuckert*, 482 U.S. at 142. Therefore, the case must be remanded so the ALJ can ask a VE to reconcile the job's frequent reaching requirement with plaintiff's overhead reaching limitation.

II. Post-Hearing Objections to VE Testimony

Plaintiff also argues that the ALJ erred by failing to acknowledge or rule on Plaintiff's written objections to the VE's testimony, which were submitted post-hearing but before the ALJ published his decision. Pl.'s Br. 6-8; *see* Tr. 300-306. Plaintiff's contends the ALJ's failure to address the post-hearing objections violated fundamental principles of Social Security Act jurisprudence, including conducting a non-adversarial proceeding, basing the step five finding on probative vocational information, and complying with the agency's Hearings, Appeals, and Litigation Law Manual ("HALLEX").

Specifically, plaintiff argues that by declining to respond to his objections, the ALJ did not

---

[2] Although in her decision the ALJ purported to determine the VE's testimony was consistent with the DOT, the hearing transcript demonstrates that this was never done. *Compare* (Tr. 29) *with* (Tr. 63-70).

allow plaintiff "to present evidence and to confront evidence against him." Pl.'s Reply at 2. Plaintiff quotes 5 U.S.C. 556(d) in support: "A party is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts." *See also Goldberg v. Kelly*, 397 U.S. 254, 270 (1970) ("Welfare recipients must therefore be given an opportunity to confront and cross-examine the witnesses relied on by the department."). Plaintiff further argues that the ALJ's failure to rule on the post-hearing objections violated his right to a "full and fair" hearing, based on the ALJ's obligation to "investigate the facts and develop arguments both for an against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110 (2000).

Plaintiff contends that the principles of Social Security adjudication mentioned above are codified by HALLEX I-2-5-55 (2015), which purportedly states that an ALJ is obligated to "rule on the objection and discuss any ruling in the decision." Pl.'s Br. at 6-7. However, review of the HALLEX reveals that the current version of I-2-5-55 does *not* require an ALJ to rule on objections made after the hearing. The full text of the provision currently reads:

> When an [ALJ] obtains a [VE] opinion during a hearing, the ALJ will generally explain why the VE is present before his or her opening statement. See [HALLEX] I-2-6-50. For detailed instructions on obtaining VE testimony at a hearing, see [HALLEX] I-2-6-74. For more information about opening statements, see [HALLEX] I-2-6-52.

HALLEX I-2-5-55, 1994 WL 637383. While one of the provisions to which I-2-5-55 refers states that an ALJ must rule on any objections *during* the hearing in the ALJ's written decision, it is silent as to post-hearing objections. *See* HALLEX I-2-6-74, 1993 WL 751902.

However, it appears the prior version of HALLEX I-2-5-55 included a provision regarding post-hearing objections to VE testimony. *See Moffit v. Berryhill*, No. 17-4015-JWL, 2018 WL

Page 11 - OPINION AND ORDER

276770, at *4 (D. Kan. Jan. 3, 2018). Plaintiff's counsel in *Moffit* directed the District of Kansas court to the same source to which plaintiff now directs this court: an unpublished Ninth Circuit order issued by the Court's mediator, *Parker v. Colvin, available at* 2015 U.S. App. LEXIS 21390, at *3 (9th Cir. Mar. 12, 2015) (*Westlaw* citation unavailable). *Parker* involved a stipulated motion for remand, and included numerous items for the ALJ to reconsider. Among those items was a quotation attributed to HALLEX I-2-5-55: "if a claimant raises an objection about the VE's opinion, the ALJ must rule on the objection and discuss any ruling in the decision." *Id.* Therefore, although neither *Moffit* nor *Parker* are binding precedent, it appears the prior version of HALLEX I-2-5-55 was applicable at the time of the ALJ's May 11, 2015 decision. *Moffit*, 2018 WL 276770, at *4.[3]

The Commissioner contends that HALLEX "has no legal force and is not binding," and cites several cases in support. *Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir. 2000); *see also Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1069-70 (9th Cir. 2010) ("HALLEX does not impose judicially enforceable duties on either the ALJ or this court"); *Roberts v. Comm'r of the Soc. Sec. Admin.*, 644 F.3d 931, 933 (9th Cir. 2011) ("we do not review allegations of non-compliance with [HALLEX] provisions") (citation omitted). Plaintiff responds that although *Lockwood* reiterated that the agency's internal guidance publications are not necessarily binding on courts, they are nonetheless "entitled to respect" to the extent that those interpretations "have the power to persuade." *Lockwood*, 616 F.3d at 1073 (quoting *Christensen v. Harris Cnty.*, 529 U.S. 576, 578 (2000)). In *Lockwood*, the Ninth Circuit was not persuaded to follow the Program Operations Manual System ("POMS"), in large part because the provision at issue was not applicable at the time of the ALJ's

---

[3] The previous version of HALLEX I-2-5-55 is available online at: https://web.archive.org/web/20150923080051/http://www.ssa.gov:80/OP_Home/hallex/I-02/I-2-5-55.html (last visited Feb. 6, 2018).

Page 12 - OPINION AND ORDER

decision. *See id.* Here, in contrast, it appears the ALJ was obligated to respond to post-hearing objections based on the version of HALLEX that was then applicable. As such, the court is persuaded that the ALJ erred in failing to rule on those objections, and the error was harmful for the reasons set forth in Section I, *supra*.

*Conclusion*

For the reasons stated above, the ALJ's decision was not based on substantial evidence or free of harmful legal error. Therefore, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 23rd of March 2018.

JOHN V. ACOSTA
United States Magistrate Judge